578 A.2d 66

**UNIVERSITY OF PITTSBURGH, WESTERN PSYCHIATRIC INSTITUTE & CLINIC, Petitioner,**

**v.**

**PENNSYLVANIA LABOR RELATIONS BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 11, 1990.

Decided July 12, 1990.

Joanthan L. Alder, Locke, Purnell, Rain & Harrell, with him, Jeffrey P. Bauman, Cohen & Grigsby, for petitioner.

Peter Lassi, with him, James L. Crawford, for respondent.

Sally A. Stix, Sally A. Stix & Associates, for intervenor, Pennsylvania Nurses Ass'n.

Before CRAIG, President Judge, and PELLEGRINI, J., and NARICK, Senior Judge.

PELLEGRINI, Judge.

The University of Pittsburgh, Western Psychiatric Institute and Clinic (WPIC), appeals from a Final Order of

Pennsylvania Labor Relations Board (Board), which found that WPIC violated Section 1201(a)(5) of the Public Employe Relations Act (Act), Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. § 1101.1201(a)(5), for refusing to submit to arbitration three grievances filed by members of the Pennsylvania Nurses Association (Union).[1]

This dispute arose with the filing of three separate grievances by several nurses (grievants) against WPIC.[2] All three grievances arose out of a dispute concerning a request by the grievants to be placed on steady evening shift employment. The first grievance alleged a violation of a side letter[3] to the collective bargaining agreement (Agreement) because of a lengthy delay by WPIC in considering the grievants' request for steady evening shift employment. (R.R. 95a–96a). The second and third grievances alleged violations of Article XX, Section 1, and Article XXI, Section 1 of the Agreement.[4] The grievants contend that they were

1. Section 1201(a)(5) of the Act provides that:
    (a) Public employers, their agents or representatives are prohibited from:
    . . . .
    (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the *discussing of grievances with the exclusive representative.*
    43 P.S. § 1101.1201(a)(5) (emphasis added).

2. The first grievance was filed on December 29, 1987, by Richard Ressler, Glen Foster, Mary Kay Gill and Mary Morrone. The second grievance was filed on February 21, 1988, by Ressler, Foster and Gill. The third grievance was filed on February 25, 1988, by Ressler only.

3. Paragraph 4 of the July 1, 1987 Side Letters to the Agreement states:
    4. The INSTITUTE recognizes the desire of employees to be assigned to steady shifts, and will continue to permit a nurse to request a steady evening or night shift. These requests, if honored, will be granted on first come first serve basis. In case of any conflict in requests, it shall be resolved on the basis of seniority. Once granted, such assignment will not be arbitrarily or capriciously changed.
    (R.R. 87a).

4. Article XX, Section 1 of the Agreement provides:
    MANAGEMENT RIGHTS
    *Section 1.* Subject only to the limitations stated in this Agreement, the ASSOCIATION recognizes the INSTITUTE retains the exclusive

given an increase in the amount of day shifts they were required to work. The grievants contend that this was done for retaliatory and vindictive reasons, and constitutes harassment of Union members exercising their rights under the Agreement. (R.R. 114a–115a, 133a–134a).

All three grievances were subsequently denied by WPIC and appealed by the Union to arbitration.[5] The Union also informed WPIC that it intended to arbitrate all three grievances in one hearing before a single arbitrator. WPIC responded to the Union's request by stating that there is absolutely no provision in the Agreement that would require consolidation of the three grievances, and thus, WPIC would decline to arbitrate the three grievances in one hearing before a single arbitrator.

The Union then demanded arbitration of the issue of whether the three grievances should be arbitrated together or separately. WPIC declined the Union's demand and reiterated its position to arbitrate the grievances separately.

The Union filed an unfair labor practice charge with the Board alleging WPIC violated Section 1201(a)(5) of the Act by refusing to submit the three grievances to a single arbitration hearing. The Board issued a Complaint against WPIC, and after conducting a hearing, the Hearing Examiner issued a Proposed Decision and Order finding that WPIC

right to manage its business including (but not limited to) the right to determine the methods and means by which its operations are to be carried on, to direct the work force, and to conduct its operations in an efficient manner.

Article XXI, Section 1 of the Agreement provides:

EQUAL OPPORTUNITY AND AFFIRMATIVE ACTION

*Section 1.* Both the INSTITUTE and the ASSOCIATION agree not to discriminate against any employee on the basis of race, color, religion, national origin, sex, age, martial status, political affiliation, veteran status, non-relevant handicap as defined by law, or ASSOCIATION membership or lack of ASSOCIATION membership. (R.R. 76a).

5. The first grievance was denied on February 26, 1988, and appealed to arbitration by letter dated March 7, 1988. The second and third grievances were denied on April 14, 1988, and appealed by letter dated April 25, 1988. (R.R. 99a–100a, 117a–118a, 136a–137a).

had committed an unfair labor practice under the Act.[6] The Board dismissed exceptions filed by WPIC and issued a Final Order. WPIC filed a Petition for Review of the Board's Final Order which is now before us.[7]

WPIC contends that the Board's finding of a violation of Section 1201(a)(5) of the Act is contrary to the substantial evidence of record which establishes that WPIC complied with the clear and unmistakable terms of the Agreement. WPIC argues that the clear and unambiguous contractual language of the Agreement, as well as the parties actual practice, establishes that separate grievances are to be separately arbitrated. WPIC bases this argument on the notion that since the Agreement refers to a grievance by the use of singular words, such as "a", "an", "the" and "it", the parties contemplated that grievances would be arbitrated separately.

The issue presented here is whether three grievances should be consolidated for a single hearing before one arbitrator. There is no explicit language in the Agreement governing the resolution of this issue. Furthermore, there is no limitation in the Agreement prohibiting an arbitrator from deciding the issue of whether the grievances should be consolidated for a single hearing.

■ Arbitration of grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory. Section 903 of the Act, 43 P.S. § 1101.903. The refusal of an employer to submit a grievance to binding

---

**6.** The Board has consistently held that an employer's refusal to participate in the selection of an arbitrator for a consolidation hearing involving multiple grievances is an unfair labor practice under Section 1201(a)(5) of the Act. *Downington Area Education Association, PSEA/NEA v. Downington Area School District,* 20 Pa. Pub. Employee R. § 20152 (1989); *Pennsylvania Labor Relations Board v. South Park School District,* 14 Pa. Pub. Employee R. § 14212 (1983).

**7.** On appeal from a decision of the Board concerning an unfair labor practice, this Court's scope of review is limited to determining whether or not the Board's findings are supported by substantial evidence and whether the conclusions drawn from those facts are reasonable and not capricious, arbitrary or illegal. *Minersville Area School District v. Pennsylvania Labor Relations Board,* 82 Pa.Commonwealth Ct. 506, 475 A.2d 962 (1984).

arbitration is a per se unfair labor practice under Section 1201(a)(5) of the Act. *Pennsylvania Labor Relations Board v. Bald Eagle Area School District,* 499 Pa. 62, 451 A.2d 671 (1982); *East Pennsboro Area School District v. Pennsylvania Labor Relations Board,* 78 Pa.Commonwealth Ct. 301, 467 A.2d 1356 (1983); *Association of Pennsylvania State College v. Pennsylvania Labor Relations Board,* 30 Pa.Commonwealth Ct. 403, 373 A.2d 1175 (1977).

It is well settled that the question of the scope of the grievance arbitration procedure is for the arbitrator, at least in the first instance. *Neshaminy Federation of Teachers v. Neshaminy School District,* 501 Pa. 534, 462 A.2d 629 (1983); *Bald Eagle Area School District; Pittsburgh Joint Collective Bargaining Committee v. Pittsburgh,* 481 Pa. 66, 391 A.2d 1318 (1978); *East Pennsboro Area School District.*

Our Supreme Court has consistently held that once it is determined that the parties are obligated to submit the subject matter of the dispute to arbitration, procedural questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.[8] *School District of the City of Duquesne v. Duquesne Education Association,* 475 Pa. 279, 380 A.2d 353 (1977); *Kardon v. Portare,* 466 Pa. 306, 353 A.2d 368 (1976). *See also Shaler Area Education Association v. Shaler Area School District,* 61 Pa.Commonwealth Ct. 211, 433 A.2d 168 (1981).

■ It is clear that preliminary procedural issues must be submitted to the arbitrator in the first instance. We find that the issue of whether the three grievances should be consolidated for a single hearing before one arbitrator is a procedural issue. Therefore, WPIC's failure to submit this issue to arbitration is an unfair labor practice under Section 1201(a)(5) of the Act.

8. Our Supreme Court, in *Kardon v. Portare,* 466 Pa. 306, 353 A.2d 368 (1976), followed the reasoning in *John Wilely and Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), where the United States Supreme Court, in analyzing questions of procedural arbitrability, first postulated that procedural questions must be left for the arbitrator to decide.

■ Finally, WPIC contends that the Proposed Decision and Order compels actual consolidation of the grievances and not merely a hearing before an arbitrator to decide the issue.[9]

The Board's decision is confusing on this point. Paragraph 2(a) of the Proposed Decision and Order states:

[T]he Institute shall:

. . . .

2. Take the following affirmative action:

(a) make a written offer to the Pennsylvania Nurses Association to engage in the selection procedures for consolidated arbitration of the three grievances filed by the PNA and to arbitrate these grievances before the arbitrator selected.

Hearing Examiner's Proposed Decision and Order ¶ 2(a).

However, the Final Order issued by the Board explicitly states that "[q]uestions of arbitrability must be decided in the first instance by the arbitrator." Board's Final Order. While it appears that the Board was affirming a decision to compel arbitration of the consolidation issue, it is not clear from the Board's Final Order and we will modify that Order accordingly.

Accordingly, the Final Order of the Board is affirmed as modified to the extent that the Final Order should require only that the issue of whether the three grievances should be consolidated in one hearing before a single arbitrator must be submitted to arbitration.

## ORDER

AND NOW, this 12th day of July, 1990, the Final Order of the Commonwealth of Pennsylvania, Pennsylvania Labor Relations Board, dated December 12, 1989, is affirmed as

9. Counsel for the Board stated at oral argument that the Board is merely seeking to compel WPIC to submit to arbitration the consolidation issue.

modified to the extent that the Final Order should require only that the issue of whether the three grievances should be consolidated in one hearing before a single arbitrator must be submitted to arbitration.