## YORK COUNTY TRANSPORTATION AUTHORITY d/b/a Community Transit, Appellants,

## v.

## TEAMSTERS LOCAL UNION # 430.

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1999.

Decided Feb. 25, 2000.

---

Joseph C. Korsak, York, for appellants.

Jason M. Weinstock, Harrisburg, for appellee.

Before SMITH, J., FRIEDMAN, J., and MIRARCHI, Jr., Senior Judge.

FRIEDMAN, Judge.

The York County Transportation Authority d/b/a/ Community Transit (YCTA) appeals from an order of the Court of Common Pleas of York County (trial court) denying YCTA's petition to vacate an Arbitrator's award which modified the discharge of John P. Smith (Grievant) to a suspension and directed Grievant's conditional reinstatement.[1] We affirm.

YCTA, a municipal authority operating fixed route and demand responsive bus service throughout York County, employed Grievant as a fixed route bus driver. YCTA and Local Union No. 430 of the International Brotherhood of Teamsters (Union), on behalf of various YCTA employees,[2] were parties to a collective bargaining agreement (CBA), effective January 1, 1996 through December 31, 1998. Articles 11 and 12 of the CBA set forth a grievance and arbitration procedure which, as a final step, allows the Union to submit to arbitration any matter that is not settled in the grievance procedure.

On February 12, 1998, YCTA sent Grievant a letter noting that Grievant's failure to report for his scheduled shift on that date was a "miss-out," in violation of section 4.02.05 of YCTA's "Policies, Procedures, and Discipline Code for Operators and Maintenance Employees" (Shop Rules). The letter further notified Grievant that, because this latest incident was his sixth miss-out within one year,[3] YCTA was terminating him as of February 12, 1998, in accordance with the provisions of the CBA and the Shop Rules.

On February 20, 1998, the Union filed a grievance on Grievant's behalf. The matter then proceeded through the parties' grievance procedure, eventually culminating in an arbitration hearing on August 21, 1998, at which the parties each presented evidence in support of their respective positions. In addressing the merits of the grievance,[4] the Arbitrator properly framed

---

1. This case actually came before the trial court on cross-motions for summary judgment. On February 16, 1999, YCTA filed a motion for summary judgment on its petition to vacate the arbitration award, as well as a brief in support of its motion for summary judgment. On March 15, 1999, the Local Union No. 430 of the International Brotherhood of Teamsters (Union) filed its motion for summary judgment and, shortly thereafter, filed both a brief in support of that motion and a brief in opposition to YCTA's motion for summary judgment. However, in its opinion, the trial court determined that the Rules of Civil Procedure do not contemplate a motion for summary judgment to a petition. Therefore, the trial court struck both summary judgment motions and treated the accompanying briefs as briefs in support and opposition to YCTA's petition to vacate the arbitration award. (Trial ct. op. at 7, 14, R.R. at 23a, 30a.)

2. The CBA covers YCTA's fixed route drivers, mechanics, porters and cleaners. (R.R. at 32a.) Grievant, hired in June 1995 as a paratransit driver, was promoted to a fixed route driver in February 1996.

3. The five other alleged miss-outs occurred on March 19, July 25, September 8, November 18 and December 19, 1997. (Arbitrator's op. at 2, R.R. at 2a.) On those occasions, Griev-

ant was disciplined in accordance with the progressive disciplinary steps set forth in section 7.05 of YCTA's Shop Rules. Although neither Grievant nor the Union filed any grievances protesting the impositions of discipline leading to Grievant's termination, there was testimony before the Arbitrator that Grievant, with the Union Shop Steward, met with a YCTA representative on various occasions to discuss discipline and that one of these discussions led to a reduction in Grievant's suspension from five to three days. (Arbitrator's op. at 15, R.R. at 15a.)

4. The Arbitrator first considered and ruled on YCTA's claim that the Arbitrator should dismiss the grievance without consideration of the merits because, under the provisions of the CBA, the grievance was both untimely filed and procedurally defective. The Arbitrator disagreed and determined that Grievant appropriately and timely filed the grievance in conformance with Article 11, section 2 of the CBA. Specifically, the Arbitrator found that the grievance was presented within six working days after the event which caused the grievance, as required in step 1 of the CBA's grievance procedure. Further, the Arbitrator concluded that the grievance was not defective simply because the Union Shop Steward signed the grievance form on Grievant's behalf, rather than Grievant signing the

the issue as follows: did YCTA have just cause to discharge Grievant and, if not, what is the remedy? In considering this issue, the Arbitrator first set forth the relevant CBA and Shop Rule provisions. Specifically, the Arbitrator looked to Article 9 of the CBA, which provides that " [t]he Employer shall not discharge nor suspend any employee without just cause ...." [5] (R.R. at 34a.) The Arbitrator also recognized the sections of YCTA's Shop Rules dealing with employee miss-outs and the progressive disciplinary steps for such

form himself. The Arbitrator noted that the CBA did not require that a grievant sign the grievance form, and, in fact, the CBA clearly provides that the Union, as representative of the employees, has the right to file a grievance on an employee's behalf. (Arbitrator's decision at 12–13, R.R. at 12a–13a.) YCTA does not challenge these procedural rulings on appeal to this court.

5. Article 9 further provides that, with respect to discharge or suspension, YCTA must give an employee at least one written warning notice, with a copy to the Union, of the complaint against the employee; except that no warning is required where the grounds for discharge is dishonesty, proven theft, dischargable violations of YCTA's substance abuse policy, recklessness resulting in serious accident while on duty, failure to report an accident, unprovoked assault on an employer or management supervisor, willful abuse of employer's equipment, proven sexual misconduct involving co-workers or passengers and/or conviction of a sex-related offense under the Pennsylvania Penal Code. Unquestionably, Grievant's conduct does not fall within these named offenses.

6. The Union objects to the Arbitrator's use of the Shop Rules in determining just cause for Grievant's discharge, contending that the Shop Rules are not binding on Grievant or the Union because they are not expressly contained in the CBA and were not bargained for by the parties. (*See* Union's brief at 9.) We recognize that the CBA does not specifically provide that YCTA's Shop Rules are applicable; however, we cannot agree that the Arbitrator acted improperly in relying on the Shop Rules to reach his decision.

Here, Article 9 of the CBA permits YCTA to terminate its employees only for "just cause;" however, by failing to further limit or define the term, the parties have agreed in the CBA to have the arbitrator interpret that provision and decide what constitutes "just cause."

infractions of company policy.[6] These sections state:

4.02.05 Miss-outs

A miss-out occurs anytime an operator fails to report for an assignment at the proper time and place, does not report for work, or calls off sick less than one hour before scheduled to report. (R.R. at 39a.) [7]

7.05 Other Disciplinary Procedures

Disciplinary steps for missouts or late reporting to work are as follows.

*Township of Penn v. American Federation of State, County and Municipal Employees, AFL–CIO, District Council No. 89*, 713 A.2d 1218 (Pa.Cmwlth.1998); *School District of Springfield Township v. Springfield Township Educational Support Personnel Association*, 711 A.2d 602 (Pa.Cmwlth.1998); *Upper St. Clair School District v. Upper St. Clair Educational Support Personnel Association, ESPA, PSEA NEA*, 168 Pa.Cmwlth. 1, 649 A.2d 470 (1994). In interpreting and applying a collective bargaining agreement, an arbitrator may look for guidance from many sources. *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977). Indeed, in the absence of a broad integration clause in an agreement, an arbitrator may refer to materials outside the agreement and conclude that these materials are impliedly incorporated within the agreement. *See American Federation of State, County and Municipal Employees, AFL–CIO, Local 2572 v. Borough of Schuylkill Haven*, 94 Pa.Cmwlth. 555, 504 A.2d 395 (1986). The Arbitrator in this case recognized the Shop Rules, took note of the fact that they antedated the CBA and referred to the testimony of witnesses regarding YCTA's application of the Shop Rules. In addition, and most importantly, the CBA itself specifically refers to the Shop Rules and deals with employee missouts. *See* CBA at Article 12, section 4 and Article 30, section 7.

7. In addition to the definition of a miss-out contained in the Shop Rules, the term miss-out appears in Article 30, section 7 of the CBA, dealing with the general conditions of employment. Under that section "[e]mployees shall be required to telephone at least one (1) hour before their work is scheduled to pull out if they will not be available to work as scheduled. Failure to provide at least one (1) hour's notice shall result in the employee being charged with a missout."

| | |
|---|---|
| First Offense | Warning |
| Second Offense | Caution |
| Third offense | Reprimand |
| Fourth Offense | Subject to Suspension |
| Fifth Offense | Suspension |
| Sixth Offense | Subject to Discharge |

(R.R. at 41a.)

In determining whether YCTA had "just cause" to discharge Grievant, the Arbitrator reviewed Grievant's entire work history but focused on the fourth, fifth and sixth miss-outs charged against Grievant, recorded on November 18, 1997, December 19, 1997 and February 12, 1998 respectively.[8] Although recognizing that Grievant's work record was replete with absenteeism and miss-outs, the Arbitrator considered the evidence presented at the arbitration hearing and found that "[t]he facts as related by the [G]rievant show that extenuating circumstances did contribute toward the [G]rievant's problem of reporting to work on time or reporting to work at all." (Arbitrator's decision at 15, R.R. at 15a.) The Arbitrator stressed that YCTA did not dispute Grievant's testimony regarding these mitigating circumstances and, further, that medical documentation and disability leave forms showed that Grievant was unable to work for extended periods of time. The Arbitrator then concluded that, due to these facts and circumstances, "the discipline of discharge was too severe [and G]rievant should be given the opportunity to show that he can become a contributing and productive employee for [YCTA]." (Arbitrator's decision at 15–16, R.R. at 15a–16a.) Accordingly, the Arbitrator made the following award:

> The grievance is denied in part, in that [YCTA] had just cause to discipline [G]rievant. It is sustained, in part, in that the discipline of discharge is to be reduced to a disciplinary suspension for the period of time he was off. He is to be reinstated under the terms and conditions set forth in the last paragraph of the Opinion.[9]

(Arbitrator's decision at 16, R.R. at 16a.) On October 6, 1998, YCTA filed a petition with the trial court seeking to vacate the Arbitrator's award. The trial court denied YCTA's petition, concluding that the "Arbitrator based his decisions on the essence of the CBA in determining that just cause did not exist in accordance with [YCTA's] Shop Rules." (Trial ct. op. at 12, R.R. at 28a.)

On appeal, YCTA asserts that the trial court erred in affirming the grievance arbitration award (1) because the trial court incorrectly stated that the Arbitrator "found" that Grievant's previous uncontested disciplinary actions lacked merit; (2) because the trial court improperly permitted a collateral attack on prior impositions of discipline; and (3) because the trial court disregarded applicable case law and CBA provisions in ruling that the Arbitrator's award drew its essence from the

---

**8.** According to the testimony of YCTA's Service Quality Representative, Grievant was charged with a fourth miss-out when he called to report off on November 18, 1997, less than one hour before his scheduled starting time; Grievant was assessed a notice of suspension for this Shop Rule infraction. Grievant was charged with a fifth miss-out on December 19, 1997 for failing to report for a scheduled shift, and he was issued a five-day suspension for violation of the Shop Rules. When Grievant failed to report as scheduled on February 12, 1998, YCTA charged him with a sixth miss-out and notified him that he was terminated as of that date.

**9.** In the last paragraph of his opinion, the Arbitrator directed YCTA to reinstate Grievant within 30 days of the award date without any backpay or benefits, but with his seniority intact. The Arbitrator also conditioned Grievant's reinstatement on his successfully passing a fitness-for-duty examination. Finally, the Arbitrator noted that Grievant's time off would be considered a disciplinary suspension, and the Arbitrator advised Grievant that any future incidences might lead to discharge. (Arbitrator's decision at 16, R.R. at 16a.)

CBA.[10] Before addressing these issues, however, we must first articulate the proper role of an appellate court when reviewing a labor arbitration award.

■ Pennsylvania courts have long recognized and endorsed arbitration as the preferred forum for resolving public labor disputes, *see e.g. Leechburg Area School District v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981); *McKeesport Area School District v. McKeesport School Service Personnel Assoc., PSSPA/PSEA,* 137 Pa.Cmwlth. 28, 585 A.2d 544 (1990); *Manheim Central Education Association v. Manheim Central School District,* 132 Pa.Cmwlth. 94, 572 A.2d 31, *appeal denied,* 525 Pa. 661, 582 A.2d 326 (1990); *American Federation of State, County and Municipal Employees, District Council 88, AFL–CIO v. City of Reading,* 130 Pa.Cmwlth. 575, 568 A.2d 1352 (1990), and have promoted the use of arbitration by adopting the "essence test," a highly circumscribed standard of review affording broad deference to arbitrators' awards. Therefore, a reviewing court may not overturn an arbitrator's interpretation of the parties' collective bargaining agreement if that interpretation can, in any rational way, be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention. *Community College of*

*Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA),* 473 Pa. 576, 375 A.2d 1267 (1977). However, while final and binding arbitration of grievances is greatly favored, arbitrators' awards are not inviolate and, on rare occasions, appellate courts are called upon to review an arbitrator's award.

■ Very recently, in *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSEA/NEA),* 743 A.2d 405 (Pa. 1999), our supreme court observed an inconsistency in the Pennsylvania courts' application of the standard of review to be employed in these instances, noting that courts have applied varying degrees of judicial deference to an arbitrator's award.[11] The supreme court thus deemed it prudent to restate the analysis to be applied under the essence test. Recognizing the many benefits of arbitration, the court emphasized that the role of a reviewing court should be one of great deference to the arbitrator chosen by the parties so that, in the vast majority of cases, the decision of the arbitrator will be final and binding upon the parties; the exception being where the arbitrator's award does not draw its essence from the CBA. Then,

---

10. In addition to these arguments, YCTA contends that the trial court erred in its determination of which pleadings it would review in ruling on the merits of the grievance. Specifically, YCTA maintains that the trial court erred in including the Union's answer to YCTA's petition to review the arbitration award as part of the record in this case. YCTA points out that the Union did not file this answer until March 25, 1999, after both YCTA and the Union had filed motions for summary judgment. YCTA argues that, because summary judgment is appropriate only after the close of the pleadings, Pa. R.C.P. Nos. 1035.1 and 1035.2, the trial court erred in considering the Union's answer. The trial court overlooked the late filing, finding that YCTA was not prejudiced by it. (*See* trial ct. op. at 6–7, R.R. at 22a–23a.) Like the trial court, we also do not believe that YCTA is prejudiced by this claimed procedural defect, and, therefore, we will not consider it further.

11. For example, in *Leechburg,* our supreme court accorded extreme deference to arbitrators' decisions, specifically holding that a court's inquiry ends once it has determined that the terms of the collective bargaining agreement encompass the subject matter of the dispute. At the other end of the spectrum, courts have inquired as to the "reasonableness" of an arbitrator's award. *See Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989) (indicating that the rational derivation test is met if the arbitrator's decision represents a reasonable interpretation of the labor agreement between the parties); *International Brotherhood of Firemen & Oilers, AFL–CIO Local 1201 v. School District of Philadelphia,* 465 Pa. 356, 350 A.2d 804 (1976), *Township of Penn,* and *City of Reading* (all stating that the arbitrator's interpretation of the labor contract must be upheld if it is reasonable).

essentially reaffirming the original essence test as stated in *Community College of Beaver County,* the court set forth a two-pronged analysis to determine whether this "essence test" was met, stating:

> First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.[12]

*State System of Higher Education,* 743 A.2d at 413.[13] There is no dispute that the Arbitrator's award here passes the first prong of the essence test. Because Article 9 of the CBA provides for suspension or discharge of an employee only for just cause, the issue of proper termination lies squarely within the terms of the CBA. Accordingly, in conducting our review, we need only consider whether the Arbitrator's award can be understood as rationally derived from the CBA.

Initially, YCTA contends that the trial court erred when it determined that the Arbitrator "found" a lack of merit in any of Grievant's previously uncontested disciplinary actions. In affirming the Arbitrator's award, the trial court noted that section 7.05 of the Shop Rules provides for employee termination only after he or she has accumulated six miss-outs. The trial court then reasoned that, because the Arbitrator "found" that three of the Grievant's miss-outs lacked merit, there could be no just cause for Grievant's discharge because he had not accumulated the required number of miss-outs.[14] (*See* trial ct. op. at 10–12, R.R. at 26a–28a.) YCTA challenges the trial court's reasoning. Although conceding that the Arbitrator discussed Grievant's disciplinary history, YCTA asserts that the Arbitrator properly did not review, or make findings on, the merits of Grievant's first five miss-outs. YCTA acknowledges that deference to an arbitrator's decision is appropriate in most circumstances; however, YTCA maintains that it is improper to do as the trial court did here and defer to findings that were never made.

We must agree that the trial court has ascribed to the Arbitrator a rationale that simply is not to be found in his opinion. The Arbitrator concluded that YCTA did not have just cause to discharge Grievant; however, contrary to the reasoning attributed to the Arbitrator by the trial court, the Arbitrator did not base that determi-

---

**12.** The court specifically stated that, although the terms rational and reasonable have been used interchangeably in the past as part of the standard of review, in this context, a review of the reasonableness of an award is not the proper focus. *State System of Higher Education.*

**13.** We note that the supreme court elected not to consider whether there might be public policy issues that could alter the analysis which would allow courts to vacate arbitrator's awards. However, here we are not concerned with such public policy matters and, as the supreme court recognized, where the facts of a particular case do not warrant it, we should not stray far from the well-established case law and principles in the area of public labor relations.

**14.** According to the trial court, the Arbitrator "found" that Grievant's fourth, fifth and sixth claimed miss-outs all lacked merit; nevertheless, the trial court deferred to the Arbitrator's "finding" only with respect to miss-outs four and five. With regard to miss-out six, the trial court recognized that, although Grievant's medical problems explained the noncompliance, Grievant clearly violated the Shop Rules by failing to call in or report for work on February 12, 1998. However, the trial court emphasized that this departure from the Arbitrator's decision ultimately did not impact on this case because the trial court already had decided that the Arbitrator correctly found that two of the miss-outs were unfounded. (Trial ct. op. at 12, R.R. at 28a.)

nation on Grievant's insufficient accumulation of miss-outs. Rather, the Arbitrator reasoned that, although Grievant's poor work record warranted discipline of some sort, discharge was too severe a penalty to impose. In other words, the Arbitrator found that, notwithstanding the fact that Grievant had amassed six miss-outs, YCTA did not have just cause to discharge Grievant because of extenuating circumstances surrounding three of those miss-outs.

YCTA also asserts that the trial court improperly permitted a collateral attack on Grievant's prior discipline. YCTA contends that Grievant had the opportunity and obligation to challenge the discipline imposed for his first five recorded miss-outs within the time limits set forth in the CBA,[15] and, because Grievant never did so, Grievant has no right to challenge those previous incidents in this proceeding. In fact, YCTA claims that it has a right to expect that once discipline is imposed and not appealed from, the discipline becomes a permanent part of an employee's employment record and disciplinary history.[16] In short, YCTA argues that the Arbitrator

lacked authority to examine the circumstances behind any of Grievant's prior impositions of discipline in determining whether YCTA had just cause to discharge Grievant for a sixth miss-out. Instead, YCTA maintains that the Arbitrator's role here was confined to determining whether the sixth miss-out on February 12, 1998 occurred and, if so, what contractual remedy applied. We agree that the Arbitrator is barred by time constraints in the CBA from relitigating Grievant's first five miss-outs, including the propriety of the discipline imposed in those cases;[17] nevertheless, the Arbitrator's role is not as limited as YCTA suggests. Indeed, the Arbitrator had no need to review Grievant's five prior miss-outs in order to determine that YCTA did not have just cause to discharge Grievant for his sixth Shop Rule violation.

YCTA takes a contrary position. Pointing out that Grievant was terminated for accumulating six miss-outs in accordance with section 7.05 of the Shop Rules, YCTA argues that, once the Arbitrator found that Grievant had garnered his sixth Shop Rule violation,[18] the question of appropriate dis-

---

15. Article 11, section 2 of the CBA provides that, as a first step in the grievance procedure, the aggrieved employee must present the grievance, in writing, to the Supervisor within six days after the event which caused the grievance. Under section 4 of Article 11, time limitations can be extended only by mutual agreement of the Union and YCTA.

16. Relying on *Trendler Metal Products*, 101 LA 749, 754–55 n. 1 (1993), YCTA argues that, in labor arbitration, unchallenged previous impositions of discipline are not reviewable by an arbitrator. YCTA quotes the following language from *Trendler:*

 The [u]nion bears the burden to prove that disciplinary notices to the grievant were rescinded or nullified as a result of timely grievance-arbitration proceedings. Absent that proof, I find that the notices issued to the grievant between 1982 and 1991 are properly part of the grievant's work record and that the [u]nion and grievant are barred by time constraints in the parties' bargaining agreement from litigating the propriety of those warnings in this proceeding.

 *Id.* at 754–55 n. 1.

17. The Union contends that the Arbitrator was free to consider all six of Grievant's miss-outs and relies on *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), *Troy Chemical Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123 (3d Cir.1994), *University of Pittsburgh, Western Psychiatric Institute & Clinic v. Pennsylvania Labor Relations Board*, 133 Pa.Cmwlth. 681, 578 A.2d 66 (1990), and *City of Erie v. International Association of Firefighters, Local 293*, 104 Pa.Cmwlth. 394, 522 A.2d 132 (1987), as providing the Arbitrator with authority to consider and make findings with respect to events that occurred prior to February 12, 1998. We are not convinced that these cases support the Union's position, and, moreover, because we resolve this matter solely on the basis of the Arbitrator's review of Grievant's sixth miss-out, we need not address the Union's contention.

18. According to the Union, the Arbitrator found that the sixth incident was not a miss-out because Grievant was unable to work from February 12, 1998 to March 23, 1998 due to depression. The Union then maintains that, because we are bound by the Arbitrator's

cipline was a matter reserved by the CBA to YCTA, and, thus, the Arbitrator's attempt to alter the assessed penalty does not draw its essence from the CBA. As support for this position, YCTA relies on this court's ruling in *Township of Penn v. American Federation of State, Municipal Employees, AFL–CIO, District Council No. 89*, 713 A.2d 1218 (Pa.Cmwlth.1998), and on Article 12, section 4 of the CBA. After considering each of these authorities, we disagree that they preclude the Arbitrator from modifying the penalty imposed by YCTA for Grievant's six miss-outs.

YCTA asserts that this case is controlled by *Township of Penn*, in which this court held that an arbitrator's reinstatement of a discharged employee was not rationally derived from the parties' collective bargaining agreement. Dennis Guyton, the grievant in *Township of Penn*, was an employee of the Township's waste water treatment plant terminated by the Township for willful insubordination and disobedience, an offense subjecting employees to immediate dismissal under the Township guidelines.[19] The union representing Guyton grieved his termination, claiming it was without just cause, and the matter proceeded to arbitration. The arbitrator found that Guyton's improper ac-

tions justified some type of discipline, but he concluded that, even if Guyton's conduct constituted willful insubordination to justify termination, the Township could not impose this penalty where another employee guilty of the same offense received a lesser punishment. The York County Court of Common Pleas reinstated Guyton's termination, and we affirmed. We pointed out that the arbitrator assumed that Guyton's conduct constituted willful insubordination and disobedience, for which discharge was a suitable penalty, and he altered the penalty only because he felt the discipline was unfairly meted out between the two employees. Under these circumstances, we concluded that the arbitrator's finding of just cause for discipline should have ended the arbitrator's inquiry. Specifically, we stated:

> Here, while the arbitrator found that just cause did exist to discipline Guyton, the arbitrator specifically determined that termination was the improper penalty. However, once the arbitrator determined that Guyton had engaged in the misconduct for which he was terminated so that just cause existed for the Township to discipline Guyton for that conduct, the arbitrator was without au-

finding that no sixth miss-out occurred, termination could not be justified under the Shop Rules. We cannot agree that the Arbitrator made such a finding. Although the Arbitrator clearly found that Grievant had an understandable excuse for failing to call off sick on February 12, 1998, this is not equivalent to finding that Grievant did not commit a Shop Rule violation. Indeed, the Arbitrator could not have made such a finding because Grievant's inability to work is irrelevant to the recording of a violation of section 4.02.05 of the Shop Rules. Article 30, section 7 of the CBA clearly provides that a miss-out will be recorded against any employee who fails to call in at least one hour before his or her shift if the employee is unable to work as scheduled. There is no question that on February 12, 1998, Grievant failed to call in and timely report his unavailability for work; thus, notwithstanding any justification for Grievant's failure to comply with YCTA's Shop Rules, the Arbitrator was without authority to remove the sixth miss-out from Grievant's record.

19. The dismissal arose from an incident in which Guyton and David Young, another employee of the plant, were assigned to clean certain problem areas in the sewer collection system. Not only did the men intentionally ignore directions to perform the assigned task, but when questioned about it, they lied and said that they had done the work. Only when specifically challenged to show proof of the accomplished work, did the men acknowledge that they had not done the required cleaning; even then, they failed to explain what they did instead. After a review of the matter, the Township manager decided that, because Young had a clean disciplinary record, he would receive a three-day suspension, the maximum allowed under the guidelines. Guyton, however, was terminated. Because Guyton had a lengthy disciplinary record, the Township saw no reason to mitigate the penalty allowed under the guidelines.

thority to alter the discipline imposed by the Township in order to obtain what the arbitrator felt was a more suitable result.

*Id.* at 1222.

YCTA argues that, just as the arbitrator did in *Township of Penn,* the Arbitrator here determined that YCTA had just cause to discipline Grievant. Thus, under the rationale employed in *Township of Penn,* the Arbitrator exceeded his authority when he continued his inquiry and considered the severity of the punishment imposed by YCTA. YCTA's argument appears persuasive at first blush. However, we note that, whereas *Township of Penn* involved a discharge for fault-based conduct, Grievant's discharge stems from a no-fault provision in the CBA. This distinction between fault and no-fault violations is critical because it determines whether an arbitrator is permitted to modify an employer's punishment where some type of discipline is warranted.

■ Under an agreement, such as the CBA here, which authorizes the arbitrator to determine whether an employer's disciplinary action is for just cause, it remains clear that "just cause" cannot be eliminated as an element in the arbitrator's determination. In fault cases, this just cause determination goes to the employee's conduct, and the arbitrator considers circumstances that might mitigate against the employee being guilty of the violative conduct with which he or she was charged. Therefore, once the arbitrator finds that the employee engaged in the misconduct for which he was terminated, so that just cause existed to discipline the employee *for that conduct,* the arbitrator is without authority to alter the discipline assessed. *Township of Penn.*[20] In other words, the arbitrator's finding that just cause existed to discipline the employee ends the inquiry and allows for no penalty reduction.

■ However, we are faced with a no-fault situation in this case, where a miss-out occurs *anytime* "an operator fails to report for an assignment at the proper time and place, does not report for work, or calls off sick less than one hour before scheduled to report." Section 4.02.05 of the Shop Rules; Article 30, section 7 of the CBA. Clearly then, the Arbitrator has no discretion to consider mitigating circumstances in a review of the charged conduct.[21] In such a case, the arbitrator's just cause consideration must go to determining whether there are mitigating circumstances surrounding the violative conduct that would warrant a reduction of the penalty imposed. To hold otherwise would allow an employer the right to unilaterally create rules that would always avoid review under the just cause standard and, thus, contravene the arbitrator's function,

**20.** *See also Crawford County v. AFSCME District Council 85 Local Union No. 2643,* 693 A.2d 1385 (Pa.Cmwlth.), *appeal denied,* 550 Pa. 693, 704 A.2d 1383 (1997) (holding that, where the arbitrator found that just cause existed to discipline a correctional officer for deliberately violating department regulations, the arbitrator exceeded his authority under the collective bargaining agreement when he reduced the officer's discharge to a nine month suspension); *Department of the Auditor General, Commonwealth of Pennsylvania v. Council 13, American Federation of State, County and Municipal Employees, AFL–CIO,* 688 A.2d 241 (Pa.Cmwlth.1997) (holding that, where the arbitrator found that the employer failed to prove the employee guilty of the conduct charged, the arbitrator's award reinstating an employee discharged for driving under the influence of alcohol drew its essence from a collective bargaining agreement permitting discharge only for just cause); *Upper St. Clair School District* (holding that, where the arbitrator found a school bus driver committed negligence, not willful misconduct as alleged, the arbitrator did not exceed the scope of his authority under the collective bargaining agreement by reducing the penalty of the driver discharged for intentional abandonment of students to a 90–day suspension).

**21.** Indeed, under the no-fault provisions of the CBA, an employee who intends to report for his or her scheduled shift, but is injured and rendered unconscious on the way to work, would be charged with a miss-out. In fact, Grievant acquired his fourth miss-out in a somewhat similar fashion.

assigned by the collective bargaining agreement, to ascertain whether any given set of circumstances constitutes just cause for discharge.

Indeed, the potential for this eventuality is reflected in YCTA's next argument, where YCTA asserts that, in attempting to modify the penalty for six miss-outs, the Arbitrator was ruling on the merit of a Shop Rule in violation of Article 12, section 4 of the CBA. That section provides:

> The power of the arbitrator is limited to the interpretation and application of the specific terms and provisions of the [CBA] and he shall have no power to add to, subtract from, alter, supplement or modify in any way such terms and provisions. The arbitrator's decision shall be final and binding upon the employees, the Union, and the Employer. A grievance relating to a discharge or other disciplinary action may be heard by the arbitrator solely to determine if the said discharge or disciplinary action is for just cause, *but he may not rule upon the merit of any shop rule.*

(R.R. at 37a.)

Under the interpretation of this language urged by YCTA, an arbitrator is limited solely to determining whether a Shop Rule violation took place. YCTA submits that, if that question is answered in the affirmative, an arbitrator has absolutely no discretion to alter the discipline set forth for a particular violation, even where mitigating circumstances exist, because that would amount to a ruling on the merit of a Shop Rule.

 On the other hand, the Arbitrator obviously interpreted this CBA provision quite differently. Although the Arbitrator recognized that Shop Rule violations *might* call for application of the Shop Rule's progressive disciplinary scheme,[22] unlike YCTA, the Arbitrator did not automatically equate a ruling that a Shop Rule violation had occurred with a determination of just cause for the discipline imposed. Rather, the Arbitrator clearly believed that he remained free to consider any mitigating circumstances to determine whether the penalty is inappropriate in a particular case. Even if we agreed with YCTA's contention that the Arbitrator misinterpreted this CBA provision, we lack the authority to overturn the Arbitrator's decision based upon YCTA's alternative contract interpretation which would limit the Arbitrator's authority to a determination of whether a Shop Rule violation took place. *See City of Easton v. American Federation of State, County and Municipal Employees, AFL–CIO, Local 447,* 722 A.2d 1111 (Pa.Cmwlth.1998), *appeal granted in part,* 558 Pa. 64, 735 A.2d 681 (1999). Where, as rationally interpreted by the Arbitrator here, the CBA does not reserve

---

**22.** The Arbitrator does not say that the relevant Shop Rules are facially invalid and may never be applied in making a "just cause" determination. Indeed, there can be no serious dispute between the parties that absenteeism and failure to report absences beforehand on a consistent basis may be grounds for termination. This is particularly true in the field of public transportation where, because YCTA operates regularly scheduled bus service, those schedules must be maintained. It is to this end that Article 30, section 7 of the CBA contains the general no-fault provision providing that any time an operator fails to provide at least one hour's notice if he or she will be unavailable to work as scheduled, the employee will be charged with a miss-out. However, as stated, the fact that the CBA affords no discretion in the recording of a miss-out does not rule out the use of discretion in determining whether the discipline connected to that miss-out is appropriate. In this case, the Arbitrator, as required by the CBA, looked to the Shop Rules as a guide to determining whether YCTA could dismiss Grievant based on his accumulation of six miss-outs, while still recognizing that YCTA's issuance of discipline for such offenses must conform to the CBA's standard of just cause. Here, the Arbitrator concluded that Grievant accumulated six miss-outs, making him "subject to discharge" under the disciplinary procedures of the Shop Rules. However, the Arbitrator found extenuating circumstances explaining Grievant's sixth and final offense and, thus, pursuant to Article 9 of the CBA, determined that YCTA lacked just cause to impose the maximum penalty and discharge Grievant.

the power to select discipline exclusively to the employer, *see County of Centre v. Musser,* 519 Pa. 380, 548 A.2d 1194 (1988); *Norristown Educational Support Personnel Association v. Norristown Area School District,* 660 A.2d 250 (Pa.Cmwlth.1995), the Arbitrator was free to do as he did here, namely, determine that Grievant's poor work record, illustrated by his six miss-outs, warranted discipline, but then go on to determine that Grievant's conduct did not amount to just cause for termination within the meaning of the CBA.

Here, the Arbitrator found mitigating circumstances in reviewing Grievant's sixth miss-out [23] and determined that, in light of Grievant's demonstrated illness, his need for immediate medical care and his month long disability, YCTA did not have just cause, within the meaning of Article 9 of the CBA, to discharge Grievant for his six violations of company policy. As stated, the judiciary must respect the arbitrator's interpretation of a collective bargaining agreement if, as here, the interpretation can in any rational way be derived from the agreement. Further, the court may vacate an arbitrator's award only where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement. *State System of Higher Education.* The parties here bargained for the opinion of the Arbitrator, and that is what they got. Because that determination is drawn from the essence of the CBA, we affirm.

## ORDER

AND NOW, this 25th day of February, 2000, the order of the Court of Common Pleas of York County, dated April 19, 1999, is hereby affirmed.

---

**23.** With respect to Grievant's sixth miss-out, the Arbitrator noted that Grievant admitted that he took two pain killers on the evening of February 11, 1998 and, as a result, he slept through his alarm on the morning of February 12, 1998. Grievant stated that, when YCTA's Service Quality Representative called at about 6:00 a.m., Grievant was so depressed that he could not work. Grievant saw his doctor on February 13, 1998; the doctor took Grievant off pain medication, put him on Prozac and told him to remain off work until March 23, 1998. (*See* Arbitrator's decision at 14, R.R. at 14a.) Based on these facts, the Arbitrator concluded that Grievant's depression and medication went a long way to explaining his actions, indicating that they were not intentional and, in fact, may have been unavoidable. We recognize that the Arbitrator similarly found mitigating circumstances with respect to miss-outs four and five. However, we stress that we have not based our decision here on these considerations.