**COUNTY OF BEDFORD, Appellant,**

**v.**

**PENNSYLVANIA SOCIAL SERVICES UNION, SEIU, AFL–CIO, Local 668.**

Commonwealth Court of Pennsylvania.

Argued Dec. 3, 2002.

Decided Jan. 13, 2003.

Aimee L. Willett, Altoona, for appellant.

Claudia G. Lukert, Harrisburg, for appellee.

BEFORE: PELLEGRINI, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

The County of Bedford (County) appeals from an order of the Court of Common Pleas of Bedford County (trial court) that affirmed an Arbitrator's award sustaining the grievance of a County Employee, Shelia Suter (Grievant). The Arbitrator found that the County had discharged Grievant without cause. Accordingly, he modified the discharge to a 30–day suspension and directed the County to place Grievant in a position with the County comparable to the one she held prior to discharge but at a different location.[1] We affirm in part and reverse in part.

Grievant was hired by the County Sheriff's Office in August, 1999 as a clerk/typist at the Bedford County Jail (Jail).[2] She worked in a secured part of the jail and was responsible for bookkeeping, typing and ordering supplies. Grievant's supervisors were the County Sheriff/Jail Warden, Gordon Diehl, and Deputy Warden, Eric Easton.

During her employment with the County, Grievant was involved in a highly volatile relationship with Joseph Cessna, a correctional officer, also employed at the Jail. On numerous occasions, the police were called to Grievant's residence or to Mr. Cessna's residence in response to domestic disputes. By all accounts, the volatile nature of the relationship was well-known by Jail personnel, including the Sheriff and Deputy Warden. In fact, on several occasions, either Grievant or Mr. Cessna called the Deputy Warden at his home seeking his assistance.[3]

Grievant's difficult relationship with Mr. Cessna continued through November 26, 2000. On that date, the couple became involved in a violent argument and Mr. Cessna shot Grievant in the arm. Grievant was hospitalized until November 30,

---

1. Grievant had worked at the Bedford County jail prior to her discharge; the Arbitrator directed that the County place her in a job anywhere but there. Reproduced Record 61a (R.R.____).

2. Grievant was initially hired by the previous County Sheriff and was asked to continue in her job by the current Sheriff when he took office in January, 2000.

3. The Deputy Warden told them to contact the police.

2000, at which time she was released to the care of her sister. Grievant did not return to work upon her release from the hospital. As a result of Grievant's absence, the County hired a temporary replacement for Grievant's position on December 4, 2000.

On December 13, 2000, Grievant went to the Sheriff's Office to file a Protection from Abuse Order against Mr. Cessna. At that time, she indicated to the Sheriff that she wanted to return to work as soon as her doctor released her.[4] However, the Sheriff and Deputy Warden informed her that she was terminated.[5] In doing so, they cited her conduct in dealing with Mr. Cessna, which they felt reflected poorly on the County and the Jail.[6] In addition, the Deputy Warden informed Grievant that a *Playgirl* magazine was found in her desk when it was cleaned out for the temporary employee. It was pointed out to her that it is a first degree misdemeanor to bring "obscene" materials into a jail under 18 Pa.C.S. § 5903(a)(7).[7]

The Pennsylvania Social Services Union, Local 668 of SEIU, AFL–CIO (Union), filed a timely grievance on Grievant's behalf. The grievance was submitted for arbitration as provided for by the collective bargaining agreement (CBA) between the parties, and as provided in 42 Pa.C.S. § 7302(b).[8] At the arbitration hearing, Grievant acknowledged that she spoke with both the Sheriff and the Deputy Warden about her relationship with Mr. Cessna, but denied being advised that her job was in jeopardy. Grievant further acknowledged that inmates are prohibited from possessing pornography, but asserted that the *Playgirl* magazine was for her own personal use. She explained that she brought mail and other personal items to work because she did not want Mr. Cessna to go through her belongings at home. Grievant denied receiving an employee handbook or a Code of Ethics that prohibited employees from bringing sexually explicit materials into the Jail.

The Arbitrator concluded that the termination was without just cause, modified the discipline by imposing a 30–day suspension. In addition, he required the County to return Grievant to work at a comparable position to be determined by the County, at a location other than the Jail.[9]

With regard to the County's first reason for termination, the relationship between Grievant and Mr. Cessna, the Arbitrator

---

4. Grievant's doctor ultimately released her to return to work on or about December 18, 2000.

5. Although Grievant was not issued a written notice of termination, it is clear that she understood she had been terminated on December 13, 2000, as a grievance protesting the action was filed on December 14, 2000.

6. Mr. Cessna was also terminated as a result of the shooting incident.

7. Section 5903(a)(7) provides:
 (a) **Offenses defined.** No person, knowing the obscene character of the materials or performances involved, shall:
 * * *
 (7) knowingly take or deliver in any manner any obscene material into a State correctional institution, county prison, regional prison facility or any other type of correctional facility.
 18 Pa.C.S. § 5903(a)(7)

8. The issue before the Arbitrator was "whether the County had just cause to terminate the Grievant's employment. If not, what shall the remedy be?" R.R. 54a.

9. The Arbitrator concluded that it was "clear that the Grievant's return to her former position would not be conducive to a good working environment." R.R. 60a.

found that the relationship involved off-duty conduct and any negative impact on the County's operations was "not readily discernible." R.R. 59a. The Arbitrator explained:

> There is no indication that the Grievant's job performance suffered due to the continuing relationship. The County also offered no explanation or proof of how its relationship with the local police department was harmed, other than the perception of the Sheriff and the Deputy Warden that the situation reflected poorly on the County and jail. Furthermore, as the Grievant was not charged in any of the incidents and was the victim rather than the perpetrator of the shooting, it is not clear how the County's reputation was harmed.

R.R. 59a. Because the evidence did not establish a "recognizable link" between Grievant's off-duty conduct and the County's operations, the Arbitrator concluded that her actions did not provide just cause for "any type" of discipline. R.R. 59a.

On the County's second reason for termination, possession of the *Playgirl* magazine, the Arbitrator found that since Grievant acknowledged that the magazine was hers and that she placed it in her desk at work, "it is apparent that she acted in violation of [Section 5903(a)(7)]." R.R. 60a. The Arbitrator concluded that "[s]uch actions plainly call for some sort of discipline," but that termination was inappropriate due to several mitigating factors. R.R. 60a. Those factors included the following: (1) the police were never notified and Grievant was not charged with a crime; (2) there was no indication that the magazine was viewed by any inmates or co-workers, or that Grievant intended it to be viewed by others; (3) it was placed in

Grievant's desk in a paper bag along with two other magazines that were not "pornographic" in nature; (4) Grievant credibly testified that she brought the magazine to work along with her personal papers so that Mr. Cessna would not have access to them; and (5) Grievant had no prior discipline problems. R.R. 60a. Accordingly, the Arbitrator entered an award stating that Grievant was discharged without cause, modifying her discharge to a 30–day suspension, ordering that Grievant "be returned to work at a comparable position to be determined by the County, which may consist of a position within the Sheriff's Office although not in the jail," and retaining jurisdiction should any issues concerning the implementation of the award arise. R.R. 61a.

The County filed a Petition to Vacate the Arbitrator's Award on October 17, 2001. The trial court affirmed, concluding that the Arbitrator "appears to have conducted a no-fault analysis" of just cause because he found that Grievant's possession of the magazine "was an alleged violation of a statute and therefore an unacceptable violation of work rules in the minds of the [County] in this case," and he considered mitigating factors in determining whether the discipline should be modified. Trial Court's Opinion at 9. The trial court agreed with the Arbitrator's analysis, concluding that "the Arbitrator's just cause determination was a rational interpretation and application of the term 'just cause' as used in the collective bargaining agreement." Trial Court's Opinion at 10. This appeal followed.

 The County presents two issues for our review.[10] First, the County contends that the Arbitrator erred in applying

---

**10.** Our review is limited to determining whether the Arbitrator's award draws its essence from the CBA:

The arbitrator's award must draw its essence from the collective bargaining agreement. Pursuant to the essence test ... a

the no-fault analysis of just cause [11] to Grievant's discharge for bringing the *Playgirl* magazine to work. Second, the County argues that the Arbitrator exceeded his scope of authority by fashioning a remedy that restricted the County's right to assign staff when he ordered the County to return Grievant to work at a comparable position at a location other than the Jail.

■ With respect to the first issue, we find that the trial court properly applied the no-fault analysis of just cause to Grievant's discharge for bringing the *Playgirl*

magazine to work. First, although the Arbitrator may have believed that Grievant violated Section 5903(a)(7) of the Crimes Code, he did not find that her conduct was willful.[12] Second, according to the record, the police were never notified and Grievant was not charged with a crime. In fact, although not addressed by the parties or the Arbitrator, there is some question as to whether the *Playgirl* magazine in question is actually "obscene" under the statute.[13] Further, Grievant was terminated for bringing the *Playgirl* mag-

---

reviewing court will conduct a two-prong analysis. First, the court shall determine if the issue as properly defined is within the terms of the collective bargaining agreement. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the collective bargaining agreement. That is to say, a court will only vacate an arbitrator's award where the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement.
*State System of Higher Education (Cheyney University) v. State College University Professional Association*, 560 Pa. 135, 150, 743 A.2d 405, 413 (1999). In this case, the issue before the Arbitrator was "whether the County had just cause to terminate the Grievant's employment. If not, what shall the remedy be?" R.R. 54a. Because the CBA provides that "the County shall not take any disciplinary action against an employee except for just cause," R.R. 18a, it is undisputed that the first prong of the essence test is satisfied. Thus, we must determine whether the Arbitrator's interpretation can rationally be derived from the CBA.

11. The distinction between fault-based and no-fault conduct is critical because it determines whether an arbitrator is permitted to modify an employer's punishment where some type of discipline is warranted. *York County Transportation Authority v. Teamsters Local Union # 430*, 746 A.2d 1208, 1217 (Pa. Cmwlth.2000). In fault cases, the just cause determination goes to the employee's conduct, and the arbitrator considers circum-

stances that might mitigate against the employee being guilty of the conduct with which he or she was charged. Therefore, once the arbitrator finds that the employee engaged in the misconduct for which he or she was terminated, so that just cause existed to discipline the employee for that conduct, the arbitrator is without authority to alter the discipline assessed. *Id.* In no-fault cases, the arbitrator has no discretion to consider mitigating circumstances in a review of the charged conduct. *Id.* In such cases, the arbitrator's just cause determination goes to whether there are mitigating circumstances surrounding the conduct that would warrant a reduction of the penalty imposed. *Id.* We have stated:

> To hold otherwise would allow an employer the right to unilaterally create rules that would always avoid review under the just cause standard and, thus, contravene the arbitrator's function, assigned by the collective bargaining agreement, to ascertain whether any given set of circumstances constitutes just cause for discharge.

*Id.* at 1217–18.

12. The County argues that Grievant's conduct was willful because "she had worked on an Inmate Handbook addressing this issue." R.R. 56a.

13. The trial court noted:

> Petitioner repeatedly asserts that possession of the magazine was "clearly" a violation of [Section 5903(a)(7)]. However, Petitioner fails to inform us why it was so clearly a violation. In fact, a review of the statute shows that this was not so "clear" a violation. The statute in question prohibits only

azine into the jail, regardless of any valid excuse or explanation she may have had. Accordingly, under *York County*, the Arbitrator was required to consider mitigating factors in determining whether the discipline should be reduced. For these reasons, we find that the Arbitrator's just cause determination was rationally derived from the CBA.

 With respect to the second issue, according to the County, pursuant to 43 P.S. § 1101.702,[14] as incorporated into the CBA under Article VII, Management Rights, Section 1,[15] the selection and direction of personnel is not subject to the bargaining process. Accordingly, the portion of the award ordering the County to return Grievant to work at a comparable position at a location other than the Jail cannot rationally be derived from the CBA. We agree.

Grievant did not request to be returned to work at a comparable position at a location other than the Jail. Rather, she requested that: (1) the discipline/discharge be rescinded; (2) she be made whole "including any lost wages, benefits, seniority"; and (3) *she be returned to work immediately.*" R.R. 53a (emphasis added). Further, the arbitrator did not have the authority to order the County to return Grievant to work at a comparable position at a location other than the Jail. Through 43 P.S. § 1101.702, as incorporated into the CBA under Article VII, Management Rights, Section 1, the County retained its ability to direct its workforce as it deems fit. By ignoring the Management Rights clause, the Arbitrator rendered Article VII of the CBA meaningless. Accordingly, this portion of the award was not rationally derived from the CBA.

We affirm the trial court's affirmance of the Arbitrator's Award on the just cause determination but reverse its holding on the Arbitrator's directive to the County to place Grievant in a position other than the Jail. Accordingly, that part of the Arbitrator's Award is vacated.

## ORDER

AND NOW, this 13th day of January, 2003, the order of the Court of Common Pleas of Bedford County dated May 29, 2002, in the above-captioned matter is hereby affirmed in part and reversed in part, in accordance with the attached opinion.

---

"obscene" material from being brought into a jail, it does not prohibit mere depictions of nudity.... If, similar to its counterpart *Playboy*, *Playgirl* depicts only "soft core" nudity, then we question whether [Grievant] would have been violating the criminal statute, and therefore, whether the violation of the statute would have been a valid basis for her termination.
Trial Court's Opinion at 7 n. 4.

14. Section 702 of the Act of July 23, 1970, P.L. 563, 43 P.S. § 1101.702. This provision provides:

Public employees shall not be required to bargain over matters of inherent managerial policy, which shall include but shall not be limited to such areas of discretion or policy as the functions and programs of the public employer, standards of services, its overall budget, utilization of technology, the organizational structure and *selection and direction of personnel*. Public employers, however, shall be required to meet and discuss on policy matters affecting wages, hours and terms and conditions of employment as well as the impact thereon upon request by public employee representatives.
43 P.S. § 1101.702 (emphasis added).

15. Article 7, Management Rights, Section 1, provides that "[t]he County retains and reserves, except as expressly limited by relevant statutes or provisions of this Agreement, all rights as 'managerial representative' which by law may not be bargainable." R.R. 18a.