844 A.2d 1217

OFFICE OF THE ATTORNEY GENERAL, Commonwealth of Pennsylvania and Attorney General Michael Fisher, Appellees,

v.

COUNCIL 13, AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, AFL–CIO, Appellant.

Supreme Court of Pennsylvania.

Argued April 30, 2001.

Decided March 22, 2004.

Eric Mitchell Fink, Alaine S. Williams, Amy L. Rosenberger, Philadelphia, for Council 13 AFSCME.

Karl A. Fritton, Ryan J. Cassidy, Philadelphia, for AG's Office.

Before: FLAHERTY, C.J., CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, JJ.

## *OPINION*

Chief Justice CAPPY.

In this appeal we are asked to determine whether the Commonwealth Court improperly vacated a labor arbitrator's award rendered pursuant to the parties' collective bargaining agreement and the Pennsylvania Public Employe Relations Act ("PERA").[1] For the reasons more fully stated below, we reaffirm the deferential standard of review of grievance arbitration awards to be used by appellate courts under PERA; conclude that the Commonwealth Court improperly vacated the arbitrator's award under that standard; and reinstate the award.

The underlying facts, as found by the arbitrator, are as follows. The Office of the Attorney General ("Employer") employed James Liptak ("Liptak"), as a Narcotics Agent II. On August 27, 1998, Liptak and his wife spent a portion of the early evening at the Wolfendale's Bar in Indiana Borough, Pennsylvania. After returning home, Liptak decided to go to a convenience store for some food and to fill his state vehicle with gasoline. On his way to the convenience store, Liptak spotted Nathaniel Arthurs, the owner of Wolfendale's Bar, standing outside of his establishment. Having some matters to discuss with Arthurs, Liptak entered the bar where he played darts and had three drinks. While at the bar, Liptak overheard a female patron ask Arthurs if he knew of the availability of drugs. Liptak engaged in a conversation with the patron who wished to go to another bar, possibly to purchase some drugs. Liptak offered to take the woman to the bar to investigate what could be a drug outlet.

While going to his vehicle, Liptak was observed by an individual who was driving past the bar. The individual stopped a police officer, Officer Brian Murphy, and advised the officer that Liptak appeared to be intoxicated and that he had a woman with him as he was entering his vehicle. Officer Murphy investigated and after following Liptak's vehicle for

1. 43 P.S. § 1101.101 et seq.

some distance, the officer, now with back-up, signaled for Liptak to pull over.

Liptak exhibited signs of intoxication including slurred speech, glassy eyes, an unsteady gait, and an odor of alcohol. Recognizing that Liptak was a state employee, Officer Murphy asked if he was on duty. After Liptak evaded the question, he stated that he was involved in performing state work. When Liptak was informed that he was in no condition to perform any duties, Liptak became verbally abusive. The officers arranged for Liptak to be picked up by his wife.

On October 26, 1998, after the Employer interviewed Liptak and after the Employer investigated the incident, Liptak was charged with: (1) unbecoming conduct; (2) use of alcohol while off-duty; (3) operation of an official vehicle while off-duty and while using alcohol; (4) violation of standards of professional courtesy and etiquette; and (5) unauthorized use of departmental equipment. In a report dated October 28, 1998, the investigating agent found validity to the first three charges. On November 17, 1998, Liptak was terminated.

Liptak's union representative, Council 13, American Federation of State, County, & Municipal Employees, AFL–CIO (the "Union"), grieved the termination pursuant to the collective bargaining agreement between the parties [2] and, after denial of the grievance through the collective bargaining agreement's grievance procedure, the parties submitted the matter to arbitration.[3]

The parties chose Arbitrator Walter J. Gershenfeld to resolve the dispute. Furthermore, the parties stipulated to the specific issue to be determined by the arbitrator: "Under the agreement, was there just cause for the discharge of James E. Liptak, and, if not, what shall the remedy be?"

2. Master Agreement between the Commonwealth of Pennsylvania and Council 13, American Federation of State, County and Municipal Employees, AFL–CIO, Effective July 1, 1996.

3. The parties' collective bargaining agreement contained a dispute resolution procedure for resolving contractual disputes between the parties. This procedure, in conformity with Section 903 of PERA, 43 P.S. § 1101.903, culminates in a final step which is "final and binding" arbitration. Article 37, Master Agreement.

In resolving this issue, Arbitrator Gershenfeld found that although Liptak had committed the alleged misconduct, there was not just cause for Liptak's termination. Specifically, the arbitrator considered, "in determining just cause," three extenuating circumstances raised by the Union. These circumstances included dissimilar discipline imposed upon other employees for like offenses, Liptak's long service with the Employer, and Liptak's subsequent rehabilitation. After considering these circumstances, Arbitrator Gershenfeld reinstated Liptak to his former position, without back pay, and conditioned Liptak's reinstatement upon his ability to refrain from further misconduct during the first three months upon return to his employment. In essence, the arbitrator found that just cause was lacking for termination, but imposed upon Liptak a lengthy suspension and a "last chance" for continued employment.

The Employer appealed the arbitrator's adverse award to the Commonwealth Court contending that the award was erroneous and that pursuant to the agreement, once the arbitrator found that Liptak had committed the misconduct for which he was charged, the arbitrator was without authority to reduce the discipline imposed by the Employer. A three judge panel of the Commonwealth Court agreed. Specifically, the Commonwealth Court found that the terms of the collective bargaining agreement restricted the arbitrator's authority solely to the issue of whether Liptak was terminated for just cause. The court went on to conclude that once the arbitrator determined that Liptak had engaged in the misconduct for which he was terminated, i.e., found just cause to exist, the arbitrator had no authority to modify the penalty imposed by the Employer, relying upon *Township of Penn v. American Federation of State, County and Municipal Employees, AFL–CIO*, 713 A.2d 1218 (Pa.Commw.Ct.1998). Thus, the Commonwealth Court in its decision impliedly equated the finding of misconduct with the contractual requirement of "just cause" for dismissal. Based on this reasoning, the Commonwealth Court vacated the arbitrator's award.

The Union appealed the Commonwealth Court's decision and we granted allocatur to address whether the Commonwealth Court improperly vacated the arbitrator's award. In doing so, we necessarily must consider whether the Commonwealth Court properly applied the standard of review to be utilized when reviewing a grievance labor arbitration award under PERA, i.e., the essence test, and whether under that test, the Commonwealth Court correctly equated "just cause" under the collective bargaining agreement to mean misconduct as engaged in by Liptak.

Before we may address the issue on which we granted allocatur, however, we must resolve a threshold issue, raised by the Union, of whether the Employer properly preserved for review its challenge to the arbitrator's award.

In support of its position that the Employer waived the issue, the Union offers that the Employer never argued at arbitration that the arbitrator lacked the authority to consider mitigating factors or that the arbitrator did not have the authority to determine whether the penalty of discharge was too severe. Furthermore, according to the Union, the Employer did not object to the introduction of evidence by the Union regarding the Employer's treatment of other employees accused of similar misconduct, evidence regarding Liptak's work history, and evidence of Liptak's post-incident rehabilitation. If the Employer believed that the arbitrator lacked authority to consider mitigating circumstances and to alter the discipline imposed under the collective bargaining agreement if it found that Liptak had engaged in misconduct, then it should have objected to the mitigating evidence offered by the Union.

The Employer responds it did not waive the issue of the arbitrator's authority to modify the discipline that it originally imposed as neither party knew of the arbitrator's treatment of the evidence until he rendered his award. Thus, the Employer's argument now regarding the arbitrator's authority did not arise until the arbitrator sustained the reasons for the Employer's actions and yet decided a lesser penalty was more appropriate. Furthermore, according to the Employer, it did

object to the introduction of evidence regarding Liptak's past performance. Finally, the Employer offers that the issue of whether an arbitrator exceeds his or her authority implicates subject matter jurisdiction, and therefore, cannot be waived.

We find in this case, that the Employer did not waive its challenge to the arbitrator's award on appeal. Specifically, the parties submitted to arbitration the issue of whether there was just cause for the discharge of Liptak, and if not, what the proper remedy should be. That is to say, the parties squarely placed before the arbitrator the issue of whether Liptak's discharge was appropriate under the terms of the collective bargaining agreement. Thus, the issue before the arbitrator was one of contract interpretation. The Employer on appeal challenged the arbitrator's interpretation of the agreement and the remedy awarded by the arbitrator. It is axiomatic that the parties could not have been aware at the arbitration how the arbitrator would interpret the just cause provision of the agreement which was directly implicated in the issue as framed. Therefore, we do not find waiver. To do otherwise would be to penalize a party for failing to anticipate and refute possible interpretations of a collective bargaining agreement at arbitration. Likewise, assuming *arguendo* that the Employer did not object to the mitigating evidence offered by the Union, this does not necessarily require a finding of waiver. Such evidence was entirely relevant to the remedy to be imposed by the arbitrator if he determined, initially, that there was not just cause for dismissal. Thus, because under the issue as stipulated to by the parties, there was an independent basis for admission of the mitigating evidence, the failure to object cannot be a basis for a finding of waiver.[4]

We now turn to the issue of whether the Commonwealth Court erred in vacating the arbitrator's award and in doing so, analyze whether the Commonwealth Court properly applied the essence test and whether under that test, the court

4. As we find that the Employer did not waive the issue of the authority of an arbitrator to modify discipline under the collective bargaining agreement, we do not need to reach the Employer's contention that the issue implicates subject matter jurisdiction.

correctly concluded that once the arbitrator found that Liptak committed the misconduct with which he was charged, just cause for discharge was established, and the termination had to be upheld. To resolve this issue, we must first consider the essence test.

All parties agree, and the Commonwealth Court recognized that judicial review of a grievance arbitration award under PERA is governed by the standard of review called the "essence test." In *State System of Higher Education (Cheyney University) v. State College University Professional Association (PSNEA–NEA)*, 560 Pa. 135, 743 A.2d 405 (1999), we clarified that the test was of two prongs. First, we ask whether the issue submitted to arbitration, as properly defined, is encompassed within the terms of the collective bargaining agreement. *Id.* at 413. Second, we inquire into whether the arbitrator's award can be rationally derived from the collective bargaining agreement. *Id.* If the arbitrator's award can rationally be derived from the terms of the collective bargaining agreement, it must be upheld. In setting forth this two-prong test, we emphasized the deferential nature of the review.

Specifically, strict adherence to the essence test is mandated by our Commonwealth's strong historical preference for the swift and efficient means of settling disputes that arise under a collective bargaining agreement by a grievance procedure culminating in binding arbitration. This preference has its roots both in statute and in our case law.

PERA mandates that the final step in the resolution of grievances or disputes arising from the agreement must be final and binding arbitration.[5] 43 Pa.C.S. § 1101.903.[6] Like-

---

5. This statute, 43 Pa.C.S. § 1101.903, reads in pertinent part:

   Arbitration of disputes or grievances arising out of the interpretation of the provisions of a collective bargaining agreement is mandatory. The procedure to be adopted is a proper subject of bargaining with the proviso that the final step shall provide for a binding decision by an arbitrator or a tri-parte board of arbitrators as the parties may agree.

6. Moreover, the introductory provision to PERA declares that it is the public policy of this Commonwealth to promote orderly and construc-

wise, our Court, on a continual basis, has made clear the strong public policy of encouraging peaceful settlement of industrial disputes by means of arbitration. *Leechburg Area School District v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981); *Community College of Beaver County v. Community College of Beaver County Soc'y of the Faculty,* 473 Pa. 576, 375 A.2d 1267 (1977); *see also, Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir.1969). We have indicated that arbitration is preferred in this context for a number of reasons. Arbitration allows disputes between labor and management to be resolved impartially by a specialized tribunal. Disputes are resolved promptly. Arbitration is a relatively inexpensive endeavor. Dispute resolution by arbitration also relieves the burden placed upon the already strained resources of the court system. Furthermore, arbitration has been heralded as an important factor in reducing industrial strife. *Danville Area School District v. Danville Area Education Assoc.,* 562 Pa. 238, 754 A.2d 1255, 1259 (2000).

█ Thus, by statute and by case law, arbitration is the favored means of resolution of labor disputes, *a fortiori,* courts should play an extremely limited role in resolving such disputes. Indeed, "[f]requent judicial disapproval of the awards of labor arbitrators would tend to undermine a system of private ordering that is of the highest importance to the well-being of employer and worker alike." *Newark Morning Ledger Co. v. Newark Typographical Union,* 797 F.2d 162, 165 (3d. Cir.1986). For this reason, it is the very deferential standard of review that is the essence test that is to be utilized in analyzing the arbitrator's award and a court will vacate that award only where it "indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *Cheyney University,* 743 A.2d at 413.

tive relationships between public employers and their employees and that unresolved disputes between public employer and its employees are injurious to the public and the General Assembly is therefore aware that adequate means must be established for minimizing them and providing for their resolution. 43 Pa.C.S § 1101.101.

In applying the essence test, the Commonwealth Court relied on its decision in *Township of Penn v. American Federation of State, County and Municipal Employees, AFL–CIO*, 713 A.2d 1218 (Pa.Commw.Ct.1998), in which the court concluded that once the arbitrator determined that the grievant had engaged in the misconduct for which he was terminated, just cause existed for the employer's chosen discipline for that conduct, and the arbitrator was without authority to alter the discipline in order to obtain what the arbitrator believed was a more suitable result. *Id.* at 1222. Based upon this reasoning, the Commonwealth Court determined that in this case Arbitrator Gershenfeld found that Liptak had engaged in the misconduct for which he was terminated. Equating the factual finding of misconduct with just cause, the Commonwealth Court concluded that "having found that just cause existed for sanctioning Liptak" the arbitrator had no authority to modify the penalty imposed.[7] Slip Op. at p. 6. Accordingly, the Commonwealth Court vacated the arbitrator's award.

To determine whether the Commonwealth Court erred in its analysis, we must initially review the terms of the collective bargaining agreement. The collective bargaining agreement between the parties provides in relevant part that the "Employer shall not demote, suspend, discharge, or take any disciplinary action against an employe without just cause." Article 28, Master Agreement. The contract further states that "any grievance or dispute which may arise concerning the application, meaning or interpretation of this Agreement shall be settled" through the grievance and arbitration procedure. Article 37, Master Agreement. Additionally, the agreement speaks to the foundation for this dispute resolution process, "[e]ach case shall be considered on its merits and the collective bargaining agreement shall constitute the basis upon which the decision shall be rendered." Article 37, Master Agree-

---

7. The Commonwealth Court stated that Arbitrator Gershenfeld found just cause for Liptak's termination. This is simply not the case. The arbitrator in his award did *not* find just cause for Liptak's discharge. While the arbitrator found that Liptak engaged in misconduct, as discussed more fully below, this is not the equivalent of a finding of just cause for discharge.

ment.  Finally, the agreement places some restrictions on the
arbitrator in resolving a grievance: "[t]he arbitrator shall
neither add to, subtract from, or modify the provisions of the
Agreement ... [and] shall be confined to the precise issue
submitted for arbitration and shall have no authority to deter-
mine any other issues not so submitted."  Article 37, Master
Agreement.

With these terms in mind, we consider the first prong of the
essence test, viz., whether the issue submitted to arbitration,
as properly defined, is encompassed within the terms of the
collective bargaining agreement.  First, the parties stipulated
that the question to be determined by the arbitrator was
"Under the agreement, was there just cause for the discharge
of James E. Liptak, and if not, what shall the remedy be?"
Based upon the clear terms of the collective bargaining agree-
ment which prohibit termination without just cause and a
grievance and arbitration procedure for settling disputes aris-
ing under the contract, it is beyond cavil that the issue
submitted to arbitration, as properly defined, was encom-
passed within the terms of the collective bargaining agree-
ment.  Thus, we find that the first prong of the essence test is
satisfied.

Next we turn to the second prong of the essence test—
whether the arbitrator's determination can be rationally de-
rived from the collective bargaining agreement.  The Employ-
er argues, and the Commonwealth Court found, that the
arbitrator's award failed to draw its essence from the collec-
tive bargaining agreement, i.e., was not rationally derived
from the collective bargaining agreement, because once the
arbitrator found that Liptak engaged in the misconduct
charged, just cause for the termination was established and
the arbitrator was required to uphold Liptak's discharge.
This argument loses its traction when one considers the role of
the arbitrator in interpreting the parties' collective bargaining
agreement and the concept of just cause as it is understood in
labor relations.

Initially, we note that the term "just cause" was not defined
by the parties in the collective bargaining agreement.  By

failing to agree upon and incorporate a definition of just cause into the collective bargaining agreement, and by casting the arbitrator into the role of resolving disputes arising under the collective bargaining agreement, we believe that it is clear that the parties intended for the arbitrator to have the authority to interpret the terms of the agreement, including the undefined term "just cause" and to determine whether there was just cause for discharge in this particular case. *See United Transportation Union, Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 380–81 (3d Cir.1995)(reasoning that parties to a collective bargaining agreement, by including the undefined just cause provision, have intentionally introduced ambiguity into the agreement and have conferred authority upon the arbitrator to interpret a submission to subsume board review of an employer's disciplinary actions).

Likewise, as a general proposition, the concept of just cause as it is used in labor relations, is not capable of easy and concrete definition.[8] A just cause provision, in its most basic terms, is a negotiated form of limited job security that to a degree restricts the employer's otherwise unfettered [9] right to discharge and discipline employees. Although there is no exact definition, there is a general consensus as to some of the factors that may be considered in determining whether there is just cause for discharge or discipline, and in evaluating the penalty imposed. Arbitrators have considered such factors as, *inter alia,* whether there was any investigation; post-discharge misconduct and pre-discharge misconduct; a grievant's past employment record, length of service, post-discharge rehabilitation; and unequal treatment of other employees for similar misconduct. Frank Elkouri and Edna Asper Elkouri, *How Arbitration Works,* 650–54, 670–87 (4th Ed.).[10]

---

8. Roger Abrams and Dennis Nolan, *Toward a Theory of "Just Cause" in Employee Discipline Cases,* 1985 Duke L.J. 594 (1985)(noting that while just cause for discipline is the most important principle of labor relations in the unionized sector, it is subject to a number of interpretations).

9. This unfettered right, is of course subject to applicable constitutional requirements and statutory labor and employment laws.

10. *See also* Clyde Summers, *Individual Protection Against Unjust Dismissal: Time for a Statute,* 62 Va. L.Rev. 481, 500–04 (1976)(finding

Based upon the undefined just cause provision contained in the collective bargaining agreement, the role of the arbitrator to interpret the terms of the collective bargaining agreement, and the general understanding of the concept of just cause, it becomes clear that the parties received the benefit of their bargain, i.e., the arbitrator was asked to interpret the "just cause" provision and did so consistent with how that term is generally understood. By equating the undefined just cause provision with the acts of misconduct engaged in by Liptak, the Commonwealth Court vitiated the bargained-for role of the arbitrator and discounted the general understanding of the concept of just cause. As noted above, the role of the arbitrator was to interpret the terms of the collective bargaining agreement to resolve disputes. Because the concept of just cause, as generally understood, may be more than a simple determination of whether the employee engaged in the misconduct, it was for the arbitrator to interpret the terms of the collective bargaining agreement and not the courts. *See Cheyney University*, 743 A.2d at 416.[11]

Based upon the above, it was entirely rational for the arbitrator to interpret the undefined just cause provision as permitting consideration of mitigating circumstances such as disciplinary actions taken against other similarly situated employees and Liptak's substance abuse rehabilitation, and to conclude that Liptak was not discharged for just cause.[12] Furthermore, based upon the issue stipulated to by the parties requiring the arbitrator to determine the appropriate remedy

that what constitutes "just cause" inevitably depends upon the work setting and special circumstances, but may include principles of management's right to manage, notice of what is prohibited, the right to equal treatment, procedural fairness and corrective discipline).

**11.** Based upon the above, to the extent *Township of Penn* is inconsistent with our decision today, it is hereby rejected.

**12.** *See American Federation of State County and Municipal Employees, District Council 88 AFL–CIO v. City of Reading*, 130 Pa.Cmwlth. 575, 568 A.2d 1352 (1990)(taking into account consideration of disparate treatment of other employees as well as alcohol abuse rehabilitation). Of course, if the Employer desires to limit the arbitrator's authority to modify its discipline of an employee once it is determined that the employee actually committed the alleged transgression, it may attempt to obtain such a limitation at the negotiating table.

if just cause was not found, it was entirely rational for the arbitrator to impose the remedy of reinstatement without back pay and a last chance situation. Thus, the arbitrator's award was rationally derived from the collective bargaining agreement. As both prongs of the essence test were satisfied, we uphold the arbitrator's award.

The Employer relies upon our prior decision in *Pennsylvania Liquor Control Bd. v. Independent State Stores Union*, 520 Pa. 266, 553 A.2d 948, 954 (1989) in which our Court indicated that once an arbitrator found that the employee committed the charged acts of impropriety, that "fact" established just cause for dismissal. Specifically, our Court opined in *Independent State Stores Union*, "[t]hat finding [that a grievant committed the charged acts] established the 'just cause' for the dismissal. At that point, the inquiry should end and [the employer's] action sustained." *Id.*

We are not, however, persuaded that *Independent State Stores Union* is dispositive of our decision today. First, in *Independent State Stores Union*, there was neither an in-depth examination of the concept of just cause, as that term has been understood in labor relations, nor meaningful discussion of the role of the arbitrator in interpreting an undefined term contained in a collective bargaining agreement. In fact, the Court in *Independent State Stores Union* determined that there was a definition of just cause contained in the rules and regulations published by the employer. *Id.* at 950. More importantly, our recent case law has emphasized the great deference our Court gives to an arbitrator's interpretation of a collective bargaining agreement. To reduce the undefined term just cause to the equivalent of a mere factual finding of misconduct would be contrary to our deferential review and in substance, constitute a judicial interpretation of the terms of the collective bargaining agreement, something that this Court has made clear is not appropriate on appellate review. Thus, while *Independent State Stores Union* retains its vitality in other respects, *see City of Easton v. American Federation of State, County, and Municipal Employees, AFL–CIO, Local*

*447*, 562 Pa. 438, 756 A.2d 1107 (2000), it does not compel relief for the Employer with respect to this issue.[13]

Finally, our decision in *City of Easton v. American Federation of State, County, and Municipal Employees, AFL–CIO, Local 447*, 562 Pa. 438, 756 A.2d 1107 (2000), does not lead us to a different result.   In *City of Easton*, we vacated an arbitrator's award which reinstated an employee who had been terminated by the City of Easton for, *inter alia*, holding a second job with a security company, and submitting time sheets to both employers to collect double pay for hours. Thus, the employee had committed either a theft against the city itself or the security company while he was working for the city.   We reaffirmed the deferential essence test, but noted that this usual deference to be accorded an arbitrator's award is tempered in a situation in which the arbitrator's interpretation of the agreement led to the governmental employer relinquishing essential control over the public enterprise, i.e., those powers essential to its ability to discharge its various functions. *Id.* at 1111.

Specifically, we noted that the collective bargaining agreement at issue in that case included a disciplinary schedule which provided that an employee could be immediately dismissed for "willful misconduct."   In recognition of our prior case law emphasizing the need for government control over powers essential to the proper discharge of the functions entrusted to that governmental entity and the fact that governmental authorities do not have the freedom of private enterprises to discontinue or bargain away the control over such functions, we concluded that the arbitrator's determination could not be rationally derived from the collective bargaining agreement where the award compelled a governmental entity to relinquish essential control over the enterprise—control the public employer could not surrender. *Id.* Thus we vacated the arbitrator's award.

**13.** *See also, County of Centre v. Musser*, 519 Pa. 380, 548 A.2d 1194 (1988); *Philadelphia Housing Authority v. Union of Security Officers # 1*, 500 Pa. 213, 455 A.2d 625 (1983).

Unlike the situation in *City of Easton*, the collective bargaining agreement at issue in this case does not provide for specific discipline for certain willful misconduct. Likewise, as noted above, the parties submitted the issue of whether there was just cause for Liptak's discharge to an arbitrator asking him to interpret the term just cause and to alter the penalty if he found that just cause for discharge was not established. Arbitrator Gershenfeld did not find just cause for Liptak's discharge, as he interpreted that term. Finally, we do not find that the award, reinstating an officer without back pay for off-duty misconduct has required the governmental employer to bargain away control over core powers that are essential to the proper discharge of the functions for which the governmental entity is responsible. *City of Easton.*

For all of the above-stated reasons, the order of the Commonwealth Court vacating the arbitrator's award is hereby reversed. The arbitrator's award is hereby reinstated.

Former Chief Justice FLAHERTY and ZAPPALA did not participate in the decision of this case.