## County of Berks v. International Brotherhood of Teamsters Local No. 429

*Joel Seth Barras,* for appellant Berks County Board of Inspectors.

*John A. DiNome,* for appellant County of Berks.

*Mark Featherman,* for appellee Teamsters Local 429.

SPRECHER, *J.,* October 12, 2007—Appellants County of Berks and Berks County Board of Inspectors of the County Prison appeal this court's order of May 30, 2007 dismissing the county's petition to vacate a portion of a grievance arbitration award of arbitrator Thomas G. McConnell Jr., which ruled in favor of appellee International Brotherhood of Teamsters Local Union No. 429.

## STATEMENT OF FACTS

The gravamen of this action is whether the county could discipline correctional officers (COs) employed at

the Berks County Prison (BCP) for their failure to qualify for weapons certification.[1]

This issue arose during negotiations for the 2001-2003 collective bargaining agreement (CBA) between the county and the union. The county considered weapons certification to be an essential job qualification and sought to require all COs to become certified. Those who did not obtain certification would be disciplined. The county explained that its reason for seeking to require certification of all COs was to protect itself from liability in the event of an emergency or disturbance at BCP.[2] (See reproduced record, grievance arbitrator's award, January 19, 2007, at 3-5.) The union opposed discipline for COs who failed to qualify; especially those who were hired prior to January 1, 2000 with no expectation that weapons qualification would be a condition of employment. (See R.R., griev. arb. award, at 4-5.) The result of the negotiations was section 9.5 of the 2001-2003 CBA which provided that all employees would be required to qualify on weapons semi-annually and that employees hired before January 1, 2000 who failed to qualify would be "required to schedule a time to qualify on a monthly basis, without pay." The parties interpreted this provision to preclude COs hired before January 1, 2000 from discipline for failure to qualify on weapons. (See R.R., griev. arb. award, at 9.) After the implementation of section 9.5, the county did not strictly enforce its right to disci-

1. The specific weapons at issue were never defined by the parties or the arbitrator but this court believes these weapons include handguns and perhaps other firearms.

2. COs do not carry weapons on the job with the exception of four COs per shift assigned to perimeter duty and COs transporting prisoners to the hospital. (See griev. arb. award, at 3-4.)

pline newly-hired COs who failed weapons qualification and "gave a lot of room" for these new employees to become qualified. (See R.R., griev. arb. award, at 5.)

After the 2001-2003 CBA expired, the parties began negotiations for a new CBA. The county sought to eliminate section 9.5 from the CBA while the union opposed its elimination. (See R.R., griev. arb. award, at 5.) The parties proceeded to interest arbitration before a panel of the Pennsylvania Labor Relations Board (PLRB) pursuant to section 806 of the Public Employee Relations Act (PERA) as amended by 43 P.S. §1101.806 (Act 195). The panel issued its interest arbitration award in June 2005. This award contained a new provision, item 9 or section 33.2C, amending the parties' CBA,[3] which stated:

"All employees covered under this agreement will be required to qualify semi-annually. Employees who fail to qualify will be suspended without pay and given four opportunities to qualify within one week. If employee fails to qualify after four attempts in one week they will be terminated." (See R.R., interest arbitration award, June 2005, at 13.)

Prior to 2005, the county provided COs at least one paid day per year for weapons training, half of which was used in the classroom and half used on the range.[4] (See R.R., griev. arb. award, at 7.) During this period, all COs were also allowed to practice shooting during their shifts prior to weapons qualification testing. (See

---

3. The provisions of the June 2005 interest arbitration award were added to the existing provisions of the 2001-2003 CBA to form the 2005-2008 CBA. (See interest arbitration award, June 2005, at 23.)

4. All training and target practice occurred either on site or immediately adjacent to BCP.

R.R., griev. arb. award, at 7.) After the June 2005 interest arbitration award, the county eliminated the weapons training day and no longer allowed COs to practice shooting prior to taking the weapons qualification test. (See R.R., griev. arb. award, at 7.) The county currently does make arrangements for COs who wish to practice shooting outside of work time. (See R.R., griev. arb. award, at 8.) In the fall of 2005, the county changed the qualifications test, gearing it toward corrections, by eliminating some of the distance shooting which had been problematic for some COs. (See R.R., griev. arb. award, at 7.)

Following the implementation of section 33.2C, several COs were unable to qualify on weapons and the county subsequently suspended them without pay.[5] The union filed a grievance challenging whether the county had just cause for suspending the COs.[6] The grievance was submitted to binding arbitration pursuant to section 35.1 of the parties' CBA and PERA. 43 Pa.C.S. §1101.903. On October 18, 2006, the grievance arbitration hearing was held. On January 19, 2007, the arbitrator issued an award concluding that the county lacked just cause to impose discipline upon the COs. According to the arbitrator, now that the county could suspend or discharge employees who failed to qualify on weapons under section 33.2C, it should maintain training "which management itself recognized was fair and appropriate in the relatively recent past." (See griev. arb. award, at

5. One CO was terminated for failure to qualify but this matter was not challenged in the grievance arbitration proceeding.

6. The separate issue of whether section 9.5 of the 2001-2003 CBA was overridden by section 33.2C of the 2005-2008 CBA is not at issue here. The arbitrator found that it was.

12.) Its failure to do so would not permit the county to then discipline COs for failing to obtain the weapons certification.

On February 17, 2007, the county filed a petition to vacate the grievance arbitration award with the Berks County Court of Common Pleas. This court heard oral argument on the county's petition and dismissed it on May 30, 2007.

On June 29, 2007, the county filed a notice of appeal to the Commonwealth Court of Pennsylvania. At the direction of this court, pursuant to Pa.R.A.P. 1925(b), the county filed and served a concise statement of errors complained of on appeal, on July 23, 2007.

## ISSUES

Appellants' concise statement of errors complained of on appeal raises three issues:

"(1) Whether this court erred in failing to vacate the arbitration award on the grounds that the arbitrator improperly inserted a contractual requirement into the labor agreement that required the county to provide weapons training to its employees.

"(2) Whether this court erred in failing to vacate the arbitration award on the grounds that the arbitrator improperly applied his definition of 'just cause' rather than the definition specified by the labor agreement.

"(3) Whether this court erred in failing to vacate the arbitration award on the grounds that the arbitrator improperly found that the county waived its right to exercise its managerial prerogative in determining how to train its employees."

## DISCUSSION

The standard of review for a court reviewing a grievance arbitration award under PERA is the "essence test." The essence test is a two-part inquiry whereby (1) the court must determine whether the issue submitted for arbitration is encompassed within the terms of the CBA; and, if so, (2) whether the arbitration award can be rationally derived from the CBA. *Office of the Attorney General v. Council 13, American Federation of State, County Municipal Employees, AFL-CIO,* 577 Pa. 257, 265, 844 A.2d 1217, 1222 (2004). Under the essence test, a reviewing court will only vacate an arbitrator's award when "the award indisputably and genuinely is without foundation in, or fails to logically flow from, the collective bargaining agreement." *County of Bedford v. Pennsylvania Social Services Union,* 814 A.2d 866, 870 n.10 (Pa. Commw. 2003) (quoting *State System of Higher Education (Cheyney University) v. State College University Professional Association,* 560 Pa. 135, 150, 743 A.2d 405, 413 (1999). Arbitration is the preferred method of resolving labor disputes in the Commonwealth so that "courts should play an extremely limited role" in resolving such disputes. *Office of the Attorney General,* 577 Pa. at 266, 844 A.2d at 1223. Accordingly, the essence test is a "very deferential standard." *Id.*

This court considered the county's petition to vacate under the essence test. It is with this deferential standard in mind that this court considers the following issues.

### Issue 1

Appellants claim this court erred in failing to vacate the arbitration award because the arbitrator improperly

inserted a contractual requirement into the labor agreement that required the county to provide weapons training to its employees. The county takes issue with the following language from the arbitrator's award: "just cause demands that as the stakes become higher for the results of such [weapons] testing, the county is obliged to maintain, at a minimum, training which management itself recognized was fair and appropriate in the relatively recent past. This includes the use of one training day (part of the day in the classroom and part at the range), including also practice at the range prior to the qualification testing." (See R.R., griev. arb. award, at 12-13.) According to the county, this language inserts a contractual requirement into the CBA between the parties, and thus the arbitrator exceeded his authority. In support of this argument, the county cites the provision of CBA between the parties governing arbitration which states "[t]he arbitrator shall have neither the jurisdiction nor the authority to add to, detract from, or modify in any way, any provision of this agreement." (See 2001-2003 CBA, §35.2B.)

In rendering his arbitration award, the arbitrator noted that the county argued that issues before him involved contract interpretation only and not a disciplinary matter, and thus a just cause case.[7] (See R.R., griev. arb. award, at 9.) However, the arbitrator found that "at its core this is a disciplinary case" because the county suspended the COs pursuant to "a contract provision [section 33.2C]

7. The county and the union were unable to agree to a stipulation regarding the issues for the grievance arbitrator's review. The arbitrator determined that the issue was "[w]hether the county had just cause for the suspensions at issue? If not, what shall the remedy be?" (See griev. arb. award, at 2.)

which sets forth discipline for failure to qualify." (See R.R., griev. arb. award at 9.) Additionally, the arbitrator cited the suspension letters as evidence this was a disciplinary grievance. The letters referenced suspensions without pay and provided the COs with notice of possible termination. (See R.R., griev. arb. award at 9.)

This court finds that this was a disciplinary case which invoked the arbitrator's authority to determine just cause. Section 35.1A of the parties' CBA defines a grievance as "any alleged violation of the terms of this agreement or a controversy as to its interpretation or application." The parties agreed to submit grievances to binding arbitration in their CBA, and as required by PERA. 43 Pa.C.S. §1101.903. Section 36.1A of the parties' CBA states that "[t]he employer shall not demote, suspend, discharge, or take any disciplinary action against an employee without just cause." Where a CBA, such as the one between the county and the union, authorizes an arbitrator to determine whether an employer's disciplinary action was for just cause, an arbitrator cannot eliminate just cause from his determination. *York County Transportation Authority v. Teamsters Local Union No. 430,* 746 A.2d 1208, 1217 (Pa. Commw. 2000). Thus, even though section 33.2C sets forth a disciplinary penalty, the county must still prove just cause. In this case, the arbitrator found there was not just cause to suspend the COs because the county provided them with inadequate weapons training prior to their suspensions. (See R.R., griev. arb. award, at 12-13.) Accordingly, the arbitrator's decision did not insert a contractual requirement into the parties' CBA but was instead his determination of just cause.

The county continues to have the right to refuse to provide weapons training to COs. But, for the county to discipline those COs failing to qualify in firearms proficiency, it must first provide training to those particular COs. Without providing such training, COs cannot be disciplined with just cause. Having considered this determination under the deferential essence test, this court ruled that the arbitrator had a rational basis for his determination. (See R.R., order of May 30, 2007.) Again considering this issue under the essence test, it is this court's opinion that the county's first error claimed of must fail and this court's denial of the county's petition to vacate should be upheld.

## Issue 2

The county next claims this court erred in failing to vacate the arbitration award on the grounds that the arbitrator improperly applied his definition of just cause rather than the definition specified by the labor agreement.

If the parties' CBA defines just cause, then an arbitrator's award must be within confines of that definition. See *Pennsylvania Liquor Control Board v. Independent State Stores Union,* 520 Pa. 266, 553 A.2d 948 (1989). Where an arbitrator substitutes his definition of just cause for that of the parties' within a CBA, the arbitrator commits reversible error. *Crawford County v. AFSCME District Council 85, Local Union No. 2643,* 693 A.2d 1385 (Pa. Commw. 1997). However, if the CBA does not define just cause, an arbitrator has the authority to adopt a definition of the term. *School District of Springfield Township v. Springfield Township Educational Sup-*

*port Personnel Association,* 711 A.2d 602, 604 (Pa. Commw. 1998).

The county argues that the parties adopted a definition of just cause, pursuant to the June 2005 interest arbitration award, in section 33.2C of the parties' CBA. According to the county, section 33.2C defines just cause in that if a CO cannot qualify on weapons, which is an essential job qualification, the county has just cause to suspend or terminate a CO. For this proposition, the county relies on *Independent State Stores,* 520 Pa. 266, 553 A.2d 948 (1989). In *Independent State Stores,* the Supreme Court overruled a Commonwealth Court ruling which upheld an arbitrator's finding. The arbitrator found that there was not just cause to terminate an employee who misappropriated employer funds because the employee was suffering from a mental condition and thus was not responsible for his acts. *Id.* at 271, 553 A.2d at 950-51. Having made this determination, the arbitrator sustained the grievance and restored employment. *Id.* at 272, 553 A.2d at 951. In that case, the employer's work rules listed a class of offenses which "may provide just cause for immediate dismissal," of which theft was one. *Id.* at 270, 553 A.2d at 950. The Supreme Court held that in such a case, upon finding that the employee had committed the offense, just cause existed and the arbitrator could go no further in his determination and should sustain the employer's sanction. *Id.* at 273-74, 278, 553 A.2d at 952, 954.

This case must be distinguished from *Independent State Stores.* In that case, just cause was defined in the work rules, which is not the case here. Just cause is not defined anywhere in the parties' CBA despite the coun-

ty's claim otherwise. According to the county, the result of the June 2005 interest arbitration award was to identify weapons qualification as a condition of employment for all COs. As a result, the county argues it possesses just cause to suspend COs who fail weapons qualifications. However, this is not a definition, it requires an inferential step. Because there is no such definition, the parties agreed in section 36.1 of their CBA to have the arbitrator interpret just cause to determine whether there was just cause for the county's suspension of the COs. *Office of the Attorney General,* 577 Pa. at 270, 844 A.2d at 1224; *York County,* 746 A.2d at 1211. The arbitrator thus had the authority, and in fact was required, to adopt a definition of just cause. *School District of Springfield Township, supra.*

Additionally, *Independent State Stores* involved theft of an employer's funds, an act of criminal misconduct, invoking a fault-based analysis of just cause. Here the COs' act of failing the weapons qualifications testing was no-fault conduct. See *County of Bedford v. Pennsylvania Social Services Union,* 814 A.2d 866, 870 n.11 (Pa. Commw. 2003) (explaining distinction between fault-based and no-fault based just cause analysis). Unlike fault-based cases, in cases where no-fault conduct is involved, an arbitrator is required to consider mitigating circumstances in examining the discipline imposed. *Id., York County,* 746 A.2d at 1217-18. In this case the arbitrator did just that, determining that the county's reduction of training mitigated against the suspensions imposed.

The Supreme Court of Pennsylvania has noted that the term just cause, in the context of labor relations, is not

easily defined. *Office of the Attorney General,* 577 Pa. at 270, 844 A.2d at 1224. That court recognized that just cause provisions are a "negotiated form of limited job security" that restrict an employer's ability to discipline or discharge its employees. *Id.* The arbitrator's decision in this case comports with this understanding and it was his role, not this court's, to interpret and define the undefined just cause provision of the parties' CBA. *Id.* at 1225. Accordingly, this court asks that the Commonwealth Court deny the county's second error complained of on appeal.

## *Issue 3*

Appellant's final error complained of is that this court erred in failing to vacate the arbitration award because the arbitrator improperly found that the county waived its right to exercise its managerial prerogative in determining how to train its employees.

In support of this claim, the county cites authority providing that public employers are not required to bargain regarding matters of "inherent managerial policy" including "selection and direction of personnel." 43 P.S. §1101.702. The county argues that a public employer, such as itself, may only bargain away such a managerial prerogative under 43 P.S. §1101.702 through an express, clear, unmistakable waiver. *Commonwealth v. PLRB,* 75 Pa. Commw. 1, 459 A.2d 452 (1983). Additionally, the county cites PLRB decisions that have interpreted whether employees receive training or not as a public employer's managerial prerogative that is not subject to bargaining. (See R.R., county brief in support of petition, pp. 15-16.)

This court does not agree with the county's argument that the arbitrator's decision required it to bargain away its managerial prerogative. The county's cited authority is not dispositive of this issue because in this case the county was not required to bargain at all. Instead, it submitted an issue to grievance arbitration, pursuant to its CBA with the union, wherein the arbitrator considered whether the county had just cause for the suspensions and, if it did not, what remedy he should award. (See R.R., griev. arb. award, at 2.) Arbitrators have broad discretion in fashioning remedies. *Pennsylvania State Education Association v. Appalachia Intermediate Unit 08,* 505 Pa. 1, 476 A.2d 360 (1984). The arbitrator's remedy was appropriate here because the county has applied new job requirements to a class of employees and added the disciplinary penalties of suspension and discharge, all the while affording the employees less opportunity to comply with these new job requirements.

## CONCLUSION

For the foregoing reasons, the court respectfully requests that the county's appeal be denied and this court's order dismissing its petition to vacate the grievance arbitration award in this matter be affirmed.